# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| DARLENE KING, individually and as parent and next friend of A.S.P.; LATRICE CANNADY, individually and as parent and next friend of G.C.B.; ASIA MOODY, as parent and next friend of K.Z.M.; and MERCITEEN SMITH, | * <br> * <br> * <br> * <br> * <br> * <br> * | |
| Plaintiffs, | * <br> * | |
| vs. | * <br> * | CV 514-32 |
| CITY OF WAYCROSS, GEORGIA; TONY TANNER, in his official capacity as the police chief of the City of Waycross; MATTHEW BROOKS, individually and in his official capacity as a police officer of the City of Waycross; and RODNEY DAVIS, individually and in his official capacity as a police officer for the City of Waycross, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | |
| Defendants. | * | |

## ORDER

Plaintiffs brought this suit against the City of Waycross, Georgia and three of its police officers: Tony Tanner (the Police Chief), Matthew Brooks, and Rodney Davis.  Presently before the Court are Defendant City of Waycross' Motion to Dismiss Plaintiffs' Complaint (Dkt. No. 9) and Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. No. 13).  Also before the

Court is a Motion to Dismiss, or in the Alternative for Judgment on the Pleadings, filed by Defendants Tanner, Brooks, and Davis (Dkt. No. 20). Upon due consideration, the Defendant Officers' Motion to Dismiss is **GRANTED.** The City of Waycross' first Motion to Dismiss is **DENIED** as moot, and its second Motion to Dismiss is **DENIED** as to Plaintiffs' federal claims and **STAYED** as to Plaintiffs' state law claims.

## I.   FACTS[1]

On April 12, 2012, Defendants Brooks and Davis went to an apartment complex located at 301 Garlington Avenue, Waycross, Georgia, in search of a man referred to by Defendants as "Fido." Dkt. No. 12, ¶ 13. According to Plaintiffs, Defendants did not have an arrest warrant or probable cause to arrest Fido. Id. at ¶¶ 14-15.

Without a search warrant or consent, Defendants Brooks and Davis entered and searched the home of Plaintiff Latrice Cannady, which was Apartment Number 163 ("Apt. 163") at the 301 Garlington Avenue address. Defendants Brooks and Davis did not have a warrant or probable cause to arrest Plaintiff Cannady or any occupant of Apt. 163. Prior to entering Apt. 163, Defendants had no reason to believe that Plaintiff Cannady was wanted for questioning by police for potential involvement in

---

[1] At this stage, the Court accepts as true the facts alleged by Plaintiffs.

criminal activity or that Plaintiff Cannady was involved in criminal activity.  Id. at ¶¶ 16-27.

Still searching for Fido, Defendants Brooks and Davis also entered and searched the home of Plaintiff Darlene King, which was Apartment Number 173 ("Apt. 173") at the 301 Garlington Avenue address, with no search warrant or consent.  Defendants did not have a warrant or probable cause to arrest Plaintiff King, and they did not have a warrant to arrest any occupant in Apt. 173.  Before entering Apt. 173, Defendants had no reason to believe that any Plaintiff located in that apartment was involved in criminal activity or was wanted for questioning by police for potential involvement in criminal activity.  Id. at ¶¶ 28-36, 41-44.

Defendants Brooks and Davis approached Apt. 173 and asked the occupants about Fido's whereabouts.  At the time, Plaintiff Merciteen Smith, the aunt of Plaintiff King, was in the living room of Apt. 173 babysitting the minor children of Plaintiffs King, Cannady, and Moody (A.S.P., G.C.B., and K.Z.M, respectively), which she regularly did.  Plaintiff Smith told Defendants Brooks and Davis that no one by the name of Fido was there, in Apt. 173.  Defendants Brooks and Davis said that they were coming in to search for Fido and pushed Plaintiff Smith aside to enter the home.  Id. at ¶¶ 37-40, 45-47.

As Defendants were entering Apt. 173, a man named Andrew Poole, the father of A.S.P. and uncle of the other minor children in the home, was asleep in an upstairs bedroom. Defendants headed upstairs, and Mr. Poole was awakened by the noise downstairs. As Mr. Poole opened the bedroom door to see what was going on, Defendant Brooks discharged his gun at Mr. Poole. The bullet pierced the bedroom door and hit Mr. Poole in the abdomen. Defendants Brooks and Davis called for assistance and an ambulance. Id. at ¶¶ 48-51, 54.

The minor children, described by Plaintiffs as "witnesses" to the shooting, were immediately frightened. Id. at ¶¶ 52-53. They began screaming, crying, and asking what happened to "Daddy" or "Uncle Andrew." Id. Plaintiff Smith and the minor children watched "hysterically" as the paramedics prepared to remove Mr. Poole from Apt. 173 and as he was placed in the ambulance. Id. at ¶ 55. Plaintiff Smith and the minor children were traumatized by the events of April 12, 2012, and they have subsequently sought psychological counseling and treatment for their injuries. Id. at ¶ 58. The police did not locate any guns or weapons on or near Mr. Poole or elsewhere in Apt. 173. Id. at ¶ 57.

Plaintiffs maintain that Defendant City of Waycross ("the City") failed to adequately train Defendants Brooks and Davis on the proper methods of conducting lawful searches and seizures of

private residences.  Id. at ¶ 186.  The City allegedly "ratified
or executed a widespread policy, custom, and practice among the
officers of its police department to disregard constitutional
limitations on searches of private residences."  Id. at ¶ 187.
Plaintiffs cite the City's failure to properly discipline
Defendants Brooks and Davis as evidence of the City's
ratification of this policy, custom, or practice.  Plaintiffs
also point to the existence of "an unwritten, informal, code of
officer-to-officer loyalty that required officers to remain
silent about the actions undertaken by fellow officers in
searching private residences without regard to the legality of
those actions."  Id.

    Plaintiffs assert that, on April 12, 2012, Defendants
Brooks and Davis were acting pursuant to a policy, custom, or
practice of the City and its Police Department.  The City was
allegedly deliberately indifferent to the constitutional rights
of Plaintiffs, both by failing to properly train Defendants
Brooks and Davis on the proper methods of conducting lawful
searches and seizures and by failing to maintain policies,
customs, and practices that ensured compliance with
constitutional requirements for searches.  Id. at ¶¶ 188-90.

    Plaintiffs maintain that Defendants Brooks and Davis, as
inexperienced and improperly trained officers, were not properly
supervised by Police Chief Defendant Tanner or more experienced

officers.  Defendant Tanner was allegedly aware that Defendants
Brooks and Davis were improperly trained and inadequately
supervised.  Plaintiffs allege that Defendant Tanner knew or
should have known that his failure to adequately train and
supervise Defendants Brooks and Davis showed "deliberate
indifference to Plaintiff's [sic] constitutional rights and a
causal connection to the constitutional infringement by his
subordinates."  Id. at ¶¶ 242-44.

Plaintiffs filed suit on April 11, 2014.  They brought
claims against all Defendants for violations of their Fourth and
Fourteenth Amendment constitutional rights under 42 U.S.C. §
1983 ("§ 1983"), based on the allegedly unconstitutional
searches and seizures of Apt. 163 (Plaintiff Cannady only) and
Apt. 173 (Plaintiffs King, Smith, and the minor children).  Dkt.
No. 12, ¶¶ 59-137.  Plaintiffs asserted state law claims of
intentional infliction of emotional distress and negligent
infliction of emotional distress.  Id. at ¶¶ 245-347.  They also
seek punitive damages and attorneys' fees.  Id. at ¶¶ 348-53.

On June 11, 2014, the City moved to dismiss Plaintiffs'
Complaint.  Dkt. No. 9.  Plaintiffs filed an Amended Complaint
on July 3, 2014.  Dkt. No. 12.  The City moved to dismiss
Plaintiffs' Amended Complaint on July 21, 2014.  Dkt. No. 13.
On August 7, 2014, Plaintiffs filed a five-page response to the
City's motion to dismiss Plaintiffs' Amended Complaint,

addressing only one of the legal issues raised by the City (that Plaintiffs' Amended Complaint was a shotgun pleading). Dkt. No. 16. By way of special appearance, Defendants Brooks, Davis, and Tanner filed an Answer to Plaintiffs' Amended Complaint on August 5, 2014. Dkt. No. 15. In that Answer, Defendants Brooks, Davis, and Tanner asserted that this Court lacks personal jurisdiction over them because service of process, as to each them, was insufficient. Id. at p. 101. The Defendant Officers elaborated on this in their Motion to Dismiss, or alternatively for Judgment on the Pleadings, filed October 17, 2014. Dkt. No. 20. Evidently, the summonses sent to these Defendants were not issued by the Court. Dkt. No. 20-2. The summonses lacked both the clerk's signature and the Court's seal. Plaintiffs did not respond to the motion filed by the Defendant Officers.[2]

## II.   LEGAL STANDARD

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed

---

[2] At a motions hearing held on December 8, 2014, Plaintiffs' counsel said his staff confused the second motion to dismiss with the first, which he called a "gross and tragic error." The Court is not sure if the "second motion" referred to by Plaintiffs' counsel was the second motion to dismiss filed by the City (many parts of which were unaddressed by Plaintiffs' response) or the Defendant Officers' first and only motion to dismiss. In any event, Plaintiffs did not respond to the Defendant Officers' motion to dismiss.

factual allegations, it must contain sufficient factual material
"to raise a right to relief above the speculative level." Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum,
a complaint should "contain either direct or inferential
allegations respecting all the material elements necessary to
sustain a recovery under some viable legal theory." Fin. Sec.
Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th
Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for
Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## III.  ANALYSIS

### a. Claims Against the Defendant Officers

As mentioned above, Plaintiffs in this case failed to serve
Defendants Brooks, Davis, and Tanner with summonses which were
properly issued by the Court. Defendants Brooks, Davis, and
Tanner have moved to dismiss the claims against them based on
insufficient process, insufficient service of process, and lack
of personal jurisdiction. Fed. R. Civ. P. 12(b)(2), 12(b)(4), &
12(b)(5). Defendants filed a special appearance and answer
raising these defenses on August 5, 2014. Plaintiffs never made
any attempt to cure the defect. Defendants argue that
Plaintiffs' failure to establish jurisdiction over them
demonstrates a flagrant disregard for the rules, and the defect
is not amendable, so dismissal is warranted.

According to Federal Rule of Civil Procedure 4, a summons must "be signed by the clerk" and "bear the court's seal."  Fed. R. Civ. P. 4(a)(1)(F) & (G).  The same rule describes how a plaintiff obtains a proper summons:

> On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal and issue it to the plaintiff for service on the defendant.  A summons . . . must be issued for each defendant to be served.

Fed. R. Civ. P. 4(b).  A defendant must be served with the summons and the complaint within 120 days after the complaint is filed.  If that does not occur,

> the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

As Defendants point out, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987).  Further, it is a plaintiff's burden to make out a prima facie case for personal jurisdiction.  Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009) (citation omitted).

Here, there is no question that the summonses delivered to the Defendant Officers were defective. They were not issued by the Court, not signed by the clerk, and not bearing the Court's seal. *See* Dkt. No. 20-2. Defendants argue that such an error is not harmless and amendable *nunc pro tunc* under Rule 4(a)(2). Many courts agree with them. In Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565 (3d. Cir. 1996), where the summons served was prepared by the plaintiff and not or signed and sealed by the clerk of the Court, the Third Circuit concluded that "[t]he failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." *Id.* at 569. The Ayres court noted that

> [a] summons which is not signed and sealed by the Clerk of the Court does not confer personal jurisdiction over the defendant. 2 James W. Moore, *Moore's Federal Practice* ¶ 4.05 (2d ed. 1996) ("Under Rule 4(b) only the clerk may issue the summons . . . [A] summons issued by the plaintiff's attorney is a nullity."); see also 4a Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1084 (2d ed. 1987).

*Id.* When a summons lacks these necessary elements, the Ayres court reasoned that "it becomes unnecessary for the district courts to consider such questions as . . . whether an extension to the 120-day service period should be granted under Rule 4(m)" or to characterize the "improper issuance as showing a flagrant disregard for the rules." *Id.* The Ayres court held that "a

summons not issued and signed by the Clerk with the seal of the court affixed thereto fails to confer personal jurisdiction over a defendant even if properly served." Id. at 570. Other courts have made similar determinations. See, e.g., Barrett v. City of Allentown, 152 F.R.D. 46, 49 (E.D. Pa. 1993) ("Failure to have a summons signed by a clerk is a serious deficiency which cannot be overlooked . . . An unsigned summons demonstrates a flagrant disregard for the rules of procedure and suggests that the summons was issued by a plaintiff and not the court Clerk.") (citations omitted); United States v. Nat'l Muffler Mfg., Inc., 125 F.R.D. 453, 455 (N.D. Ohio 1989) ("Plaintiff's failure to serve defendant with a signed and sealed summons cannot be regarded as a mere oversight that warrants perfunctory amendment"); Gianna Enterps. v. Miss World (Jersey) Ltd., 551 F. Supp. 1348, 1358 (S.D.N.Y. 1982) (finding that, while harmless errors that give proper notice are clearly amendable *nunc pro tunc*, "[s]ervice of an unsigned and unsealed summons . . . is a more serious infraction for which a court, in its discretion, need not allow amendment.").

The Eleventh Circuit has expressed its agreement with the Ninth Circuit that Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Sanderford v. Prudential Ins. Co. of Am., 902 F.2d 897, 900 (11th Cir. 1990) (citing United Food &

_Commercial Workers Union v. Alpha Beta Co._, 736 F.2d 1371, 1382

(9th Cir. 1984)) (affirming default judgment against defendant

where summons lacking return date was deemed to be in

substantial compliance with Rule 4(b) and defendant was not

prejudiced by defect in process).  Even "[a]bsent a showing of

good cause, the district court has the discretion to extend the

time for service of process."  _Lepone-Dempsey v. Carroll Cnty._

_Comm'rs_, 476 F.3d 1277, 1282 (11th Cir. 2007) (citing _Horenkamp_

_v. Van Winkle & Co._, 402 F.3d 1129, 1132-33 (11th Cir. 2005)).

In the Eleventh Circuit, even if a district court finds that a

plaintiff has not shown good cause for failing to effect timely

service pursuant to Rule 4(m), "the district court must still

consider whether any other circumstances warrant an extension of

time based on the facts of the case."  _Id._  Although the fact

that a statute of limitations has run does not require a court

to extend time for service of process under Rule 4(m), a

district court must at least consider this as a factor in

deciding whether or not to dismiss a case without prejudice for

failure to timely effect proper service.  _Id._

     Plaintiffs have argued in general terms, though only at a

motions hearing and not in any briefing, that the weight of the

equities and animating principles behind the Rules favor a

result in which the Court gives them leave to amend and perfect

service of process.  However, the Plaintiffs were unable to

provide any cause—good or not—for (1) sending the Defendant
Officers summonses that did not come from the Court, which is a
grave deficiency, and (2) failing to ever attempt to correct
this error, even after it was brought to their attention by
Defendants' Answer on August 5, 2014, Dkt. No. 15, p. 101, and
again by Defendants' Motion to Dismiss on October 17, 2014, Dkt.
No. 20.  When asked at the motions hearing why a valid summons
did not issue, Plaintiffs' counsel answered, "That is a
profoundly good question, Your Honor, and I am struggling with
that myself."

The fact that the summonses served on these Defendants
appear to have been sent directly by the Plaintiffs is
troubling.  This is not a mere technical defect, like spelling a
name wrong or forgetting to include a return date.  In light of
the seriousness of the defect, and the total lack of cause for
Plaintiffs' failure to effect proper service within the time
limit required by the Rules, the Defendant Officers' Motion to
Dismiss is **GRANTED** without prejudice.  The Court has considered
the potential impact of the statute of limitations in making
this determination.

> **b. Claims Against the City**

> **i.   Fourth Amendment Standing**

The Plaintiffs seek to recover for violations of their
Fourth Amendment rights.  The Fourth Amendment of the United

States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"

The City contends that Plaintiff Smith and the minor children do not have standing to assert claims based on the allegedly wrongful search of Plaintiff King's apartment. As the City rightly notes, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed[.]" Id. at 173 (quoting Jones v. United States, 362 U.S. 257, 261 (1960)).

The City's first argument based on this principle is that Plaintiff Smith and the minor children cannot hold the City liable for injuries they claim to have suffered by reason of Mr. Poole's shooting. The City cites two cases in support of this argument. Dkt. No. 13-1, pp. 10-11. In the first, Coon v. Ledbetter, the Fifth Circuit Court of Appeals determined that a woman, who was with law enforcement officers outside of her trailer home, had no standing to assert a violation of her constitutional rights when the sheriff's deputies shot at her husband as he was entering the trailer. 780 F.2d 1158, 1160-61 (5th Cir. 1986). However, the couple's young child who was

inside the trailer did have a constitutional claim, because the child was more directly involved in the shooting, and a jury could have found that the requisite level of recklessness was met by the deputy shooting into the trailer when other people may have been inside. Id. The second case, Borrero-Rentero v. Rivera, is similar. 761 F. Supp. 5 (D.P.R. 1991). In that case, a man was shot by the police while his sister and niece were in the home. The District Court of Puerto Rico determined that the sister and niece did not have standing to maintain a civil rights action.

The difference between the cases cited and the instant case is that Plaintiffs in this case assert that their rights were violated by the unlawful search rather than the wrongful shooting. In Coon, the constitutional analysis was based on the use of excessive force, 780 F.2d at 1161-64, and in Borrero-Rentero, the plaintiffs seemed to be making due process claims. 761 F. Supp. at 6. In other words, the plaintiffs' claims were based on the shooting itself and not an unlawful search. Though Plaintiffs' alleged injuries might not have occurred if Defendant Brooks had not shot Mr. Poole during the allegedly unlawful search, Plaintiffs' constitutional claims are based on the search and not the shooting. The City's cases do not show that someone who is subjected to a wrongful search cannot recover for their injuries suffered pursuant to the search, just

because a distinct wrong committed by the police during the wrongful search is what caused the plaintiff's injuries.

The City's second standing argument is that Plaintiff Smith and the minor children did not have a constitutionally protected reasonable expectation of privacy in Plaintiff King's home, Apt. 173, and thus they cannot assert claims based on the allegedly wrongful search of it.

Even when not the owner or renter of a residence, a person may have Fourth Amendment standing to object to a wrongful search if he can establish that he had a legitimate expectation of privacy in the place searched.  One can establish such an expectation by "demonstrating an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee." United States v. Baron-Mantilla, 743 F.2d 868, 870 (11th Cir. 1984) (internal quotations and citations omitted).  The United States Supreme Court has expressed that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."  Minnesota v. Carter, 525 U.S. 83, 90 (1998).

In order to support its argument that Plaintiff Smith has no standing to challenge the search of Plaintiff King's apartment, the City characterized Minnesota v. Carter as establishing that "a person has no reasonable expectation of

privacy where he is neither a resident nor an overnight guest in a residence." Dkt. No. 13-1, p. 11. But the rule is not so stark. In Minnesota v. Carter, the persons seeking Fourth Amendment protection were in the residence searched for a few hours bagging cocaine. 525 U.S. at 86. The Supreme Court described a spectrum with overnight guests, who may claim Fourth Amendment protection, on one end and a person merely "legitimately on the premises", who may not claim Fourth Amendment protection, on the other, and found that the cocaine baggers were somewhere in between. Id. at 91. Weighing the "purely commercial nature of the transaction engaged in [], the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder," the court "conclude[d] that respondents' situation [was] closer to that of one simply permitted on the premises" and held that the search did not violate the respondents' Fourth Amendment rights. Id. The court's analysis demonstrates that determining whether someone had a legitimate expectation of privacy is a fact-dependent inquiry. The court did not state that overnight guests are the only nonresidents who may ever merit Fourth Amendment protection. The City also cited United States v. Howard, in which the Eastern District of Tennessee determined that a man at a residence babysitting did not have a legitimate expectation of privacy in the residence. 1:10-CR-56,

2011 WL 2489920, at *3 (E.D. Tenn. June 21, 2011). In making its determination, the court noted that the man "was at most an occasional visitor at the residence, who periodically came over for sex and babysitting, but who did not spend the night." Id.

In this case, Plaintiffs have alleged that Plaintiff Smith is the aunt of Plaintiff King and would regularly supervise the minor children of Plaintiffs King, Cannady, and Moody in Apt. 173. Dkt. No. 12, ¶ 40. The Amended Complaint states that Plaintiff Smith had a legitimate expectation of privacy in Apt. 173. Id. at ¶ 135. Based on the facts alleged, it is plausible to infer that Plaintiff Smith—a family member and regular caretaker of the minor children at this home—had an unrestricted right of custody and control of the premises and that she was present more often than the occasional guest or invitee. The cases offered by the City demonstrate that the legitimate expectation of privacy determination depends on the specific facts of each case. One babysitter's connection to a residence might be quite different from that of another. Taking Plaintiffs' allegations as true, the Court does not find that Plaintiff Smith's Fourth Amendment claims warrant dismissal at this point on this ground.

The City contends that the children lack standing because two of them were not alleged to reside in Apt. 173 and because no controlling case law holds that a minor child has a

reasonable expectation of privacy in her family's dwelling. In
support of its argument, the City cites several cases from
district courts outside of the Eleventh Circuit which generally
suggest that a child who is too young to understand anything
cannot have a legitimate expectation of privacy in a place.
Dkt. No. 13-1, pp. 12-13 (citing, e.g., <u>Castro v. City of</u>
<u>Chicago</u>, No. 07-CV-931, 2013 WL 5435275, at *5 (N.D. Ill. Sept.
30, 2013) ("Absent allegations that the challenged search had
anything to do with [the child] or his belongings . . . it is
simply not reasonable to conclude that his legitimate
expectations of privacy were violated"); <u>Morales-Placencia v.</u>
<u>City of Chicago</u>, No. 08-C-5365, 2011 WL 1542964, at *3 (N.D.
Ill. Apr. 21, 2011) ("[The child] does not allege that he was
personally searched, that he or his property was the object of
the search, or that the search of the home had anything to do
with him . . . It is simply not plausible that [the] three year
old [child] was anything but a bystander who may have witnessed
illegal acts taking place."); <u>Ferguson v. Unicoi Cnty.</u>, No.
2:03-CV-360, 2005 WL 2407664, at *7-8 (E.D. Tenn. Sept. 29,
2005) (babysitter and children temporarily in another family's
home had no standing to contest search of residence)).

While the logic of the cases cited by the City is
compelling and may ultimately be applicable in this case, at
this point, the Court does not know how old the minor children

were at the time or, for the non-resident children, how strong their connection was to Apt. 173. The facts pleaded in the Amended Complaint suggest that the minor children were at that residence "regularly." It is plausible that discovery may show that King's child and, though less likely, the other children, had legitimate expectations of privacy in Apt. 173.

Eleventh Circuit precedent supports the notion that children may have a legitimate expectation of privacy in a residence. In Lenz v. Winburn, the Eleventh Circuit held that children may give consent to searches if that consent is voluntary and free of duress or coercion. 51 F.3d 1540, 1548-49 (11th Cir. 1995). Children do not need to be fully aware of their rights to have those rights: "Fourth Amendment rights . . . protect the interest of the citizen 'to be let alone.' . . . Thus, the subject of a Fourth Amendment-violative search need not be aware of her right to refuse to give knowing and voluntary consent." Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 242 (1973)) (internal citation omitted). And, while discussing the effect of sharing space on expectations of privacy, the court mentioned the expectation of privacy that children have in a place: "[r]ather, the third-party consent rule recognizes that sharing space with another lessens the expectation of privacy in that space. This compromise of the expectation of privacy is no less the case for a minor co-

occupant than for an adult." Id. (internal citation omitted).

The court stated that "privacy is an intuitive interest, and

legal sophistication is not required even for adults to give

valid consent." Id. Though it was considering a child's

ability to consent to rather than challenge a search, the

Eleventh Circuit's pronouncements suggest that children may have

a constitutionally protected legitimate expectation of privacy

in a place. The Court will not dismiss the claims of the minor

children on this ground at this point.[3]

### ii. Municipal Liability

The Supreme Court has limited municipal liability under §

1983, and there is no respondeat superior liability rendering

cities liable for wrongful conduct by police officers. Gold v.

City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658

(1978)). "[A] municipality may be held liable for the actions

of a police officer only when municipal 'official policy' causes

a constitutional violation." Id. There is not automatic

liability every time a city fails to adequately train or

supervise its police officers and those police officers violate

someone's rights; rather, municipal liability arises where "the

municipality inadequately trains or supervises its employees,

---

[3] Discovery will shine light on the subjective expectation of privacy that these children actually did have and allow for a more informed determination about whether any such expectation was objectively reasonable.

this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." Id. A city's inadequate police training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)). To establish such deliberate indifference, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Id. at 1350-51 (citations omitted).

The portion of the Amended Complaint setting forth the Plaintiffs' constitutional claims against the City mainly consists of conclusory allegations and recitals of the elements of a cause of action under Monell. See Dkt. No. 12, ¶¶ 138-94. For example, Plaintiffs contend that the City failed to adequately train Defendants Brooks and Davis on the proper methods of conducting lawful searches and seizures of private residences, the actions of Defendants Brooks and Davis were pursuant to a policy, custom, or practice of the City of Waycross and its Police Department, and the City was deliberately indifferent to the constitutional rights of Plaintiffs by failing to train Defendants Brooks and Davis and

failing to maintain policies, customs, and practices that ensure compliance with the constitutional mandates on searches. Plaintiffs also contend that the City ratified or executed a widespread policy to disregard constitutional limitations on searches of private residences, as shown by the City's failure to properly discipline Defendants Brooks and Davis.

The one factual allegation that stood out from the rest of the conclusory recitals was the allegation that "there was an unwritten, informal, code of officer-to-officer loyalty that required officers to remain silent about the actions undertaken by fellow officers in searching private residences without regard to the legality of those actions." Dkt. No. 12, ¶ 187. If this fact is accepted as true, it is—though just barely— plausible to infer that the City knew of a need to train or supervise in this area and deliberately failed to take action to do so, which, in turn, resulted in the officers' allegedly wrongful conduct and Plaintiffs' harms. Therefore, the City's motion to dismiss Plaintiffs' § 1983 claims is **DENIED**.

## IV. CONCLUSION

The City also seeks dismissal of Plaintiffs' emotional distress claims under state law. Plaintiff is given fifteen (15) days from the date of this Order to submit any briefing regarding how the remaining Defendant, the City, could be liable for those causes of action. The Defendant Officers' Motion to

Dismiss (Dkt. No. 20) is **GRANTED** without prejudice.  The City's

Motion to Dismiss Plaintiffs' Complaint (Dkt. No. 9) is **DENIED**

as moot.  The City's Motion to Dismiss Plaintiffs' Amended

Complaint (Dkt. No. 13) is **DENIED** as to Plaintiffs' § 1983

claims and **STAYED** as to Plaintiffs' state law claims.


**SO ORDERED**, this __31st__ day of March, 2015.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA